**Richard L. NICHOLS,**
**Petitioner-Appellee,**

v.

**E.P. PERINI, Superintendent and Attorney General, State of Ohio, Respondents-Appellants.**

No. 86–3421.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1987.

Decided May 12, 1987.

Rehearing and Rehearing En Banc Denied June 26, 1987.

Cordelia A. Glenn, Asst. Atty. Gen., Columbus, Ohio, Bruce Selnick (argued), for respondents-appellants.

Nancy L. Firak (argued), Salmon P. Chase, College of Law, Northern Kentucky University, Highland Heights, Ky., Robert S. Catz, Cleveland-Marshall College of Law, Cleveland State University, Cleveland, Ohio, for petitioner-appellee.

Before: ENGEL and GUY, Circuit Judges; and PECK, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Respondent, Perini (State), appeals from the granting of a writ of habeas corpus to petitioner Nichols. The writ was granted on the basis of the determination that Nichols' plea of guilty was not knowingly made. The magistrate's decision below, which became the opinion of the district court when adopted, was essentially based on crediting Nichols' subjective version of his understanding of his plea bargain. Because we believe that the district court did not give the deference required by 28 U.S.C. § 2254(d) to state court findings, we reverse.

## I.

The procedural history of this case is long and involved, but must be at least briefly summarized.

Nichols was indicted by the February, 1979, term of the Columbiana County, Ohio, Grand Jury for one count of aggravated burglary, in violation of Ohio Rev. Code § 2911.11(A)(3); three counts of burglary, in violation of Ohio Rev. Code § 2911.12(A); and sixteen counts of breaking and entering, in violation of Ohio Rev. Code § 2911.13(A). The State agreed to reduce the aggravated burglary of count one of the indictment to simple burglary, and *nolle prosequi* fifteen counts of breaking and entering, in return for Nichols' plea of guilty to four counts of burglary (as charged in counts one, two, three, and four of the indictment) and one count of breaking and entering (as charged in count seven of the indictment). Under the agreement, the State would make no recommendation as to sentence. On May 11, 1979, pursuant to the plea bargain agreement, Nichols pled guilty to four counts of burglary (counts one, two, three, and four of the indictment, as amended) and one count of breaking and entering. On July 5, 1979, Nichols was sentenced to an aggregate term of imprisonment of 13 to 65 years.

Nichols never sought to prosecute a direct appeal of his conviction. However, on October 4, 1979, and again on December 20, 1979, he filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 with the Common Pleas Court of Columbiana County. He alleged in his second petition, *inter alia*, that he was denied the effective assistance of counsel; that he was improperly induced to enter a guilty plea; and that the sentence imposed was cruel and unusual. The State responded with the filing of a motion for summary judgment. The court sustained the State's motion and entered findings of fact and conclusions of law on September 3, 1980.

Nichols perfected an appeal from said judgment to the Seventh Judicial District Court of Appeals for Columbiana County, Ohio. The appellate court, by opinion and order dated October 21, 1980, affirmed the judgment of the common pleas court.

Nichols then sought leave to appeal to the Ohio Supreme Court through the filing of a brief on January 27, 1981. The State responded with the filing of a memorandum opposing jurisdiction. By order dated May 27, 1981, the supreme court denied Nichols' motion for leave to appeal for lack of a substantial constitutional question.

Nichols then filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging the following grounds for his release:

   1. He was improperly induced to enter a guilty plea;

   2. He was denied the effective assistance of counsel in conjunction with his guilty plea; and

   3. The sentence he received constituted cruel and unusual punishment.

The district judge referred the petition to a magistrate who conducted an evidentiary hearing on July 28, 1982. At the conclusion of this hearing, the magistrate requested posthearing briefs. In Nichols' brief he advanced arguments not made, or at least not clearly made, in his petition. Specifically, he argued:

   1. Petitioner's plea of guilty was made without knowledge and understanding of the consequences, contrary to the requirements of due process of law.

   2. The sentence petitioner is currently serving is constitutionally defective.

   a. The sentence petitioner is currently serving is enforced in a manner violative of the principles of substantive and procedural due process of law.

   b. The sentence petitioner is currently serving was imposed contrary to double jeopardy protections.

The State responded to these new arguments by claiming that Nichols was now urging unexhausted claims that should be pursued in state court through the vehicle of a delayed appeal.

In response, the magistrate agreed that Nichols' claim, at least with respect to the double jeopardy issue, was unexhausted, and stayed the federal court proceedings

**556**

until Nichols could resolve the issue in the state courts by way of an application for delayed appeal to the Seventh Judicial District Court of Appeals for Columbiana County, Ohio.

Nichols' attempts at a delayed appeal were rejected by the Ohio courts on procedural grounds.[1] Over the State's objection, the magistrate concluded that state court remedies had been exhausted and proceeded to the merits of Nichols' claim. It was at this point that another unusual twist occurred in this saga. The magistrate, on his own, concluded that Ohio law *mandated* that the sentences imposed on Nichols be consecutive, since the offenses to which he pleaded guilty were committed while he was on parole. The magistrate stated:

> This leaves the petitioner's contention that he is entitled to relief because of his unawareness of the possibility of consecutive sentences. As noted, he and his lawyer gave different accounts about the substance of their discussions which led to entry of the plea. In their briefs the parties have focused on this conflict in an effort to persuade the court to give credence to either the petitioner or his former attorney.
>
> Resolution of this dispute is not, in my opinion, necessary in order to decide this case. Regardless of whether the petitioner was aware of the *possibility* that the sentences might run consecutively, there can be no dispute that he was totally unaware that state law *mandated* consecutive sentences.

(Magistrate's Opinion, July 6, 1983, App. 183).

The district court adopted the magistrate's recommendation and granted habeas relief. The state appealed to this court and, on May 24, 1985, we reversed in an unpublished opinion. *Nichols v. Perini*, 765 F.2d 1460 (6th Cir.1985). This opinion concluded by stating:

> Because the magistrate concluded that petitioner was unaware of the conse-

quences of his plea based on his erroneous interpretation of section 2929.41, we REVERSE the decision of the district court and REMAND for a determination consistent with this opinion as to whether petitioner's plea was in fact entered into knowingly.

Pursuant to our remand, this matter again was referred to the magistrate who concluded, on February 6, 1986, that Nichols did not knowingly enter a plea of guilty. The magistrate recommended again that a writ issue and, on April 23, 1986, the district court ordered the writ to issue.

**II.**

On remand from this court, the only issue considered below was whether Nichols knew he was exposing himself by pleading guilty to a maximum term of imprisonment of 65 years. No new hearings were held after our remand and this issue was resolved on the basis of the record previously made and the magistrate's memory thereof.

On appeal the State phrases the issue before this court to be "whether Petitioner's guilty plea was knowingly and intelligently made with a full understanding of the consequences of the plea?" Nichols, on the other hand, phrases the issue to be "whether [the] District Court's finding that appellee's guilty plea was made without a full understanding of the consequences is a finding of fact which cannot be disturbed unless shown to be clearly erroneous?"

We conclude that both parties miss, at least in part, the first issue which we must consider, which is perhaps explainable by the long and somewhat confusing history of this case.

This case was first held in abeyance in the district court so that the petitioner could pursue unexhausted claims in state court. However, after exhaustion was completed, *the prior unexhausted claims were not the ones on which this case was ultimately decided.* When the case was

---

1. It appears that Nichols and his counsel proceeded improperly in state court or that the state court misconstrued his efforts. A delayed appeal was sought as to the post-conviction proceedings (or at least was interpreted as such by the Ohio courts) and there is no procedure for this. What should have been pursued was a delayed appeal from the conviction itself.

finally considered ripe for habeas disposition, the magistrate ignored or rejected the claims which had been the subject of the abortive delayed appeal and, as noted *supra*, decided the case on an issue he raised *sua sponte*. After the reversal of the magistrate's decision, it was remanded for consideration of an issue that had already been considered by the state courts in Nichols' initial post-conviction proceedings and *decided adversely to him*. We perhaps unwittingly added to the confusion in our order of remand when this case was previously before the court. Since the only issue decided on appeal was the narrow one as to whether the Ohio statute mandated consecutive sentences, there was no need to consider the broader implications of our decision as it related to the totality of that which had gone on before in this case. Consequently, on remand, the State did not raise and the magistrate did not consider the ramification of what had already been determined in the Ohio courts on this issue of the plea having been knowingly made.

Nichols specifically raised the issue of lack of knowledge of the potential maximum sentence he faced in his Ohio postconviction proceedings. The Ohio Court of Appeals described the issues raised by Nichols as follows:

> In this petition, he alleged that he was promised by trial counsel that in return for his plea, he would receive a sentence of two-fifteen years; that at a hearing, he was represented by an attorney who he did not know; State only had the testimony of a codefendant; the sentence was cruel; at sentencing, he and his attorney were unaware of the length of sentence; sentencing judge had a personal motive.

(App.62).

In responding to Nichols' claim of lack of knowledge, the Ohio Court of Appeals stated:

The records before the court completely refute any contention that petitioner or his counsel were not aware of the maximum sentence which could be imposed. This was acknowledged, in writing, by the appellant and his attorney, in a "Response to Court signed by both and filed May 11, 1979."

(App. 62).

Prior to this matter reaching the Ohio Court of Appeals, the Common Pleas Court for Columbiana County had also made findings of fact relative to this issue.[2] (App. 57–58). When the Ohio Supreme Court denied leave to appeal, the decision of the court of appeals became the law of the case.

■ The decision by the Ohio Court of Appeals that Nichols was aware of his maximum exposure is a finding of fact based upon the record. As such, federal habeas review has been severely restricted by Congress. Title 28 U.S.C. § 2254(d) provides in pertinent part:

> [A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct....[3]

Section 2254(d) then goes on to list eight separate exceptions to the "presumed to be correct" mandate. It is possible that in the case before us one or more of those eight exceptions might apply. The difficulty, however, is that Nichols never made this argument in his habeas petition nor did the magistrate or district court give even lip service acknowledgement to the fact they were dealing with an issue that was already the subject of a state court factual determination.[4]

We consider the failure to acknowledge that federal habeas procedures are very

---

**2.** After this matter was heard in common pleas court on January 18, 1980, the court issued an order denying relief but no opinion. When it reached the Ohio Court of Appeals, that court remanded it for findings of fact and conclusions of law. (App. 56).

**3.** It is clear that a review by a state appellate court on the record constitutes a "hearing" as is

contemplated by § 2254(d). *Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981).

**4.** In this regard we find particularly appropriate the Supreme Court's observations in *Sumner*:

> When Congress provided in § 2254(d) that a habeas court could *not* dispense with the "pre-

specifically limited in scope by Congress to be of serious import because it unfortunately is the norm rather than the exception in habeas proceedings reviewed by this court. A great many of the habeas petitions filed treat the federal proceedings as if they were just another step in a *de novo* appellate review process. This case is a graphic illustration of such an approach. The issue on which this case was ultimately decided below was never the primary thrust of Nichols' arguments either in the Ohio courts or in the habeas proceedings. For example, in Nichols' habeas petition we note that he explains his grounds for relief on this issue as follows:

A. Ground one: Conviction by plea of guilty induced without understanding of the consequences of the plea.

Supporting FACTS (tell your story *briefly* without citing cases or law): Petitioner entered into a plea bargained agreement with the Prosecutor's Office of Columbiana County as inducement to plead guilty to specific counts within the original indictment. The basic element of the agreement was that Petitioner was to receive a sentence of two to fifteen years incarceration. The result of the proceedings at the time of sentencing was an aggregated sentence of thirteen to sixty-five years incarceration. If the petitioner had not trusted and believed in the plea bargained agreement, the original plea would have been not guilty to all counts with his innocence or guilt determined by a Jury.

(App. 13).

▇ Nichols has always felt that he had a plea bargain of two to fifteen years and that this bargain was not kept. His feelings resulted from three factors: (1) his own experience with the system as a prior convicted felon, (2) the sentence that a co-defendant received, and (3) the "guesstimate" of his attorney as to a likely range of sentence. Nichols undoubtedly was shocked at the stiff sentence he received

and ever since it happened has been trying to transmogrify this shock into some type of procedural or constitutional defect. As we read this record, Nichols' argument that he did not realize his consecutive sentences could be "stacked" to total 65 years is purely an after-thought. It may well be that he gave little heed since he never felt he would receive such a sentence, but there is a great difference between a plea made unknowingly and one made upon expectations that never reach fruition.

We are not writing on a clean slate in this area of the law. When the Supreme Court decided *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), it issued federal courts their marching orders insofar as § 2254(d) is concerned:

In order to ensure that this mandate of Congress is enforced, we now hold that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors [of § 2254(d)] were present, or the reasoning which led it to conclude that the state finding was "not fairly supported by the record."

*Sumner*, 449 U.S. at 551, 101 S.Ct. at 771. In Sumner, the Court remanded for further proceedings. We find it unnecessary to remand here for several reasons. First, this matter has now been in the courts in a post-conviction posture for seven years. Second, there is a complete record before this court including the record of evidentiary hearings held below. There is no more to be learned about this case. Third, although the magistrate determined that he believed Nichols when Nichols said he was not clear on the maximum sentence exposure he had, the magistrate did not go on to determine if more information would have made a difference. Where an examination of the record reveals that proper plea taking procedures were followed,[5] and that the plea was rationally motivated, the after-the-fact claim of petitioner that he would have proceeded to trial had he had more information must be examined in a

---

sumption of correctness" embodied therein unless it concluded that the factual determinations were not supported by the record, it contemplated at least some reasoned written

references to § 2254(d) and state court findings.

449 U.S. at 549, 101 S.Ct. at 770.

5. We note that the plea taken in state court was a model of correct procedures which would

more critical light than was done here. *Guerrero v. Harris*, 461 F.Supp. 583, 588 (S.D.N.Y.1978). Nichols was a convicted felon who was indicted while still on parole for twenty additional separate burglaries or breaking and enterings. In his negotiated plea bargain, Nichols was not only allowed to plead to just four burglaries and one count of breaking and entering, but the very serious charge of aggravated burglary was reduced to the lesser included charge of burglary. The obvious benefits from such a plea must have been as apparent to Nichols as they are to us. This is particularly true where there had never been a suggestion that Nichols was other than guilty as charged on all counts nor that the State had other than an airtight case. Going to trial would not only have been an exercise in futility, but also it would have exposed Nichols to a jail term that dwarfs the one about which he presently complains.

Finding no infirmity of constitutional proportions in Nichols' guilty plea, we REVERSE.

pass muster under even the more stringent federal procedural standards. The judge explored at length the nature of the plea bargain and informed the defendant of all his constitutional rights. Additionally, there was not only a written advice of rights and consequences form which was given to Nichols, but he was required to give a *written* response to the form.