**Arthur H. SMITH, Petitioner–Appellee,**

v.

**Arnold R. JAGO, Supt.,
Respondent–Appellant.**

No. 88–3775.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1989.

Decided Oct. 20, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1990.

George H. Lancaster, Jr. (argued), Ohio Public Defender Com'n and Arthur H. Smith, Columbus, Ohio, for Arthur H. Smith, petitioner-appellee.

John J. Gideon (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio, for Arnold R. Jago, respondent-appellant.

Before: ENGEL, Senior Circuit Judge;[*] BOGGS, Circuit Judge; and COHN, District Judge.[**]

ENGEL, Senior Circuit Judge.

Respondent Arnold Jago, Superintendent of the London Correctional Institution, appeals from a judgment of the United States District Court for the Southern District of Ohio granting Petitioner Arthur Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and from the denial of a motion to alter or amend that judgment pursuant to Fed.R.Civ.P. 59(e). The principal issue on appeal is the extent to which the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), apply where it is alleged that deficient conduct by trial counsel adversely affected the outcome of the defendant's direct appeal as of right. Also involved is the deference to be accorded a state appellate court's determination of a mixed question of law and fact made by the appellate court while reviewing the denial of a petition for post-conviction relief after a full evidentiary hearing in the state trial court.

## I.

At approximately 10:00 p.m. on September 6, 1980, a robbery occurred at El Rancho Grande Restaurant in Wooster, Ohio. At least three men dressed in army fatigues and wearing ski masks committed the crime. The men, brandishing an assortment of weapons, ordered the employees and patrons to the floor and took their watches, wallets, jewelry and cash. The approximately thirty victims were then placed in the restrooms, where they remained until after the robbers left. Police officers arrived at the scene and interviewed the witnesses, but were unable to obtain any positive evidence as to the identities of the men who had committed the robbery. Physical evidence found by the police at the scene included bullet frag-

* The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989.

** The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

ments fired by one of the men involved and a spent shell casing.

Two weeks later, on September 20, 1980, City of Upper Arlington police involved in an investigation of a "man-with-a-gun" report were called to the Scioto Trails, a local restaurant. In the parking lot of that establishment they found and impounded an automobile, later determined to be registered in the name of Gary Burress, one of Petitioner Smith's codefendants. Inside the car, the police found, among other things, an AR–15 automatic rifle, a wallet containing Smith's driver's license, a watch later identified as belonging to Smith, a watch later identified as being the property of one of the El Rancho Grande robbery victims, and miscellaneous clothing.

That same night, Ronald Bondurant, Smith's other codefendant, was stopped not far from the Scioto Trails by a police officer. The officer found in Bondurant's possession a .45 caliber automatic weapon, a gas mask, and a flashlight. Examination of Bondurant's papers disclosed a receipt issued to him for the purchase of an AR–15 rifle and ammunition. It was later learned that the receipt was for the weapon found in Burress' car, which tests indicated had fired the bullet found at the El Rancho Grande. Another police officer picked up Smith in Upper Arlington that same night. Smith allegedly explained his presence there by telling the officer that three men had kidnapped him in Columbus, had taken him to Upper Arlington, and had dumped him in the street after taking his watch and wallet. Smith, who was held briefly on an outstanding warrant for a Grand Theft which occurred in 1975, was later released.

Smith and his two codefendants were subsequently arrested and charged with aggravated robbery. Ohio Rev.Code Ann. § 2911.01. All three were incarcerated at the Wayne County Jail. Shortly before Smith and his codefendants were tried before a jury, Smith's trial counsel learned of the existence of a prosecution witness, named Gerry Wayt, who claimed that Smith's two codefendants had told him that they and two other men, neither of whom was Smith, had committed the El Rancho

Grande robbery. Wayt, who has a lengthy criminal record, had been confined with Smith's codefendants while they were awaiting trial.

After the trial began on April 6, 1981, but before any testimony was heard, Smith's trial counsel learned that the prosecution had subsequently decided not to call Wayt. Smith's trial counsel then orally renewed a previously denied motion to sever Smith's trial from that of his codefendants. Claiming that he intended to use the subsequently discovered statement of Wayt, Smith's trial counsel argued that because Smith's defense would inculpate his codefendants, severance was required. The trial court denied the motion.

Smith's trial counsel later attempted to have Wayt's testimony introduced under an exception to the "hearsay rule." At an in-chambers conference, Smith's trial counsel explained his strategy to the trial judge. By calling Smith's codefendants to the stand and inducing each to invoke his Fifth Amendment privilege against self-incrimination, Smith's trial counsel would have them declared "unavailable." This, it was claimed, would allow Smith's counsel to move to admit Wayt's testimony under the admission against interest exception to the hearsay rule. Ohio R.Evid. 804(B)(3). Fearing a mistrial, the trial court instructed Smith's trial counsel not to call his codefendants to the stand, and Smith's trial counsel complied with the trial court's instructions. No effort was made to preserve the proffered testimony for review on appeal.

In addition to the facts set out above, the evidence at trial revealed that on October 6, 1980, many or all of the witnesses who were at the El Rancho Grande on the night of the robbery participated in a photographic lineup, but were unable to make a positive identification of any of the men involved. At trial, one witness was able, however, to identify Smith with "reasonable certainty" as one of those involved in the El Rancho Grande robbery. Two other witnesses thought Smith was involved or that he looked familiar. A significant num-

ber of the other witnesses, however, were unable to make any identification at all.

Confronted with this evidence, Smith presented an alibi defense. Smith and his witnesses testified that on the day of the robbery, he was helping members of his fiance's family move into a new home. In support of this claim, Smith introduced into evidence a receipt identifying himself as the individual who rented a U–Haul truck on the day of the robbery. The receipt indicated that the truck was rented by Smith at 2:00 p.m. and returned at 6:00 p.m. The U–Haul employee who was working at the rental location at issue on the date in question testified that while he could not identify Smith at trial, he would have required Smith, in accordance with company procedure, to show his driver's license as identification. Smith and his co-defendants were each convicted of one count of aggravated robbery, and Smith was sentenced to a term of seven to twenty-five years imprisonment.

Smith challenged his conviction on direct appeal, claiming *inter alia*, that the trial court erred in denying his motion to sever. The Ohio Court of Appeals affirmed the conviction, finding that any error committed by the trial court was harmless because Smith's trial counsel had failed to preserve Wayt's testimony properly for appeal. The Ohio Supreme Court dismissed Smith's motion for leave to appeal.

Smith then sought post-conviction relief in state court, claiming that he had been denied effective assistance of counsel. In his petition, Smith argued, through new counsel, that his trial counsel's failure to call Wayt as a witness and to preserve the proffered testimony in the record prejudiced the result at trial and on appeal. The trial judge conducted an evidentiary hearing at which Smith's trial counsel testified. By stipulation, the parties introduced a statement of Wayt's proffered testimony. The government also introduced the testimony of one Gary Dees, who stated that Smith and his codefendants had admitted committing the robbery. The government claimed that, despite the fact that Dees had a criminal record, it would have called him to testify had Wayt been allowed to testify at Smith's trial. The trial court found that Smith's counsel had not been ineffective and that Smith had not been prejudiced by his counsel's actions. The Ohio Court of Appeals affirmed, agreeing that no prejudice had resulted. The Ohio Supreme Court again denied leave to appeal.

Smith then filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. In his petition, Smith alleged that he was denied effective assistance of counsel because his trial counsel failed "to adduce evidence known to be exculpatory to petitioner." The district court granted Smith's petition, ordering that a writ of habeas corpus issue unless the State of Ohio commenced a retrial of the petitioner within 30 days. In its opinion, filed on March 10, 1988 ("March Opinion"), the district court found that Smith was denied effective assistance of counsel because his trial counsel had failed to preserve the proffered testimony on the record for appeal, and thus prejudiced Smith in his direct appeal. Respondent Jago then moved to alter or amend the judgment of the district court, claiming that the district court erred in finding that Smith had been prejudiced. The district court denied the motion in an opinion and order filed on July 25, 1985 ("July Opinion").

Repeating claims raised in his motion to alter or amend, Respondent Jago now appeals from both of the district court's orders, claiming that the court erred in: (1) finding affirmative proof or prejudice as required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) failing to defer to the findings of the Ohio Court of Appeals, made during post-conviction proceedings, that Smith was not prejudiced by his counsel's deficient conduct. Smith has been represented by an attorney from the Ohio Public Defender Commission on appeal.

## II.

In *Strickland v. Washington, supra,* the Supreme Court developed a two-component analysis for determining whether a convict-

ed defendant's representation at trial is so defective that it requires reversal of the defendant's conviction:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064. *See Meeks v. Bergen*, 749 F.2d 322, 326–27 (6th Cir.1984). *See also Beasley v. United States*, 491 F.2d 687 (6th Cir.1974). In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), our court adopted the same analysis for cases, such as the one now before us, where it is alleged that trial counsel's deficient conduct prejudiced the outcome of the defendant's first appeal as of right. In that case, petitioner's trial counsel failed to move for a directed verdict at the close of all the evidence, as required by state law. As a result, the state appellate court refused to consider, on direct appeal, petitioner's claim that there was insufficient evidence to support his conviction. 785 F.2d at 137. After exhausting his remedies in state court, petitioner sought federal habeas corpus relief from his murder conviction on two grounds: (1) that there was insufficient evidence to support the conviction, and (2) that he had been denied effective assistance of counsel. Applying *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the majority of our court first found that the "insufficient evidence" claim had been properly raised for review in the district court, but that it was without merit. Turning to the ineffective assistance of counsel claim, our court relied on *Strickland* and concluded:

> Given our conclusion that there was sufficient evidence to support Maupin's conviction we conclude that counsel's alleged error did not result in such prejudice as to meet the second part of the *Strickland* standard.

785 F.2d at 140. Thus, our court essentially held that the error by trial counsel did not warrant setting aside the judgment of the criminal proceeding because the error had no effect on the judgment of conviction.

■ In *Maupin*, that analysis required our court to determine, based on the trial record, whether there was sufficient evidence for a rational trier of fact "to find proof of guilt beyond a reasonable doubt." 785 F.2d at 140 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In the case now before us, such an approach admittedly requires the somewhat more speculative determination of the probable result of the trial had the motion to sever been granted and, as a result, Wayt's testimony had been introduced. In essence we assume that, had Smith's counsel not failed to preserve Wayt's testimony, a new trial would have been granted, but then consider whether the outcome of the severed trial would have been different. We believe that, where the record permits it, such an approach is consistent with the pronouncement in *Strickland* that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691, 104 S.Ct. at 2066.

■ In making its finding of ineffective assistance of counsel in this case, the district court first found that Smith's trial counsel's failure to preserve for the record his discussion with the trial judge and to proffer the anticipated exculpatory testimony was deficient conduct within the meaning of *Strickland*. The district court then determined that the deficient representation at trial prejudiced the outcome of Smith's direct appeal. Respondent Jago challenges only the second determination; accordingly, we limit our review to that issue. *Cf. Strickland*, 466 U.S. at 697, 104

S.Ct. at 2069 (in rejecting a claim of ineffective assistance of counsel it is sufficient to find that a petitioner has failed to meet either the deficiency or the prejudice component of the Court's two-part analysis). Because we believe that, on the record of this case, the district court applied an improper standard of prejudice by looking only to the outcome of Smith's direct appeal and not to the outcome of the entire criminal proceeding, we must, at the very least, vacate and remand the cause for further consideration in light of the proper standard. Since we are satisfied, however, that no further development of the record is necessary, we believe that further proceedings below are not required.[1]

### III.

Before applying the proper standard to this case, we note that there is another troubling reason why the district court's judgment must be vacated. Even if we believed that the district court applied the proper standard, we would have to find that the court erred because it failed to give the findings of fact, made by the state appellate court during Smith's post-conviction proceedings, the deference they are due under the statute which governs federal habeas review of state convictions. 28 U.S.C. § 2254(d).

Following his conviction, Smith filed a Petition for Relief after Judgment in the Court of Common Pleas of Wayne County, Ohio in which he made the following claim:

> Petitioner asserts that the judgment entered against him is voidable under the guarantees of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution affording him the right to effective assistance of counsel. Petitioner's trial counsel who also represented him on appeal, failed to subpoena an essential witness to testify on his behalf.

In a memorandum in support of the petition, Smith argued, through new counsel, that the failure to "adduce the Wayt testimony" was deficient representation, explaining that had his trial counsel done so, the testimony either would have been admitted, or had the court not permitted the testimony, trial counsel could have proffered the testimony and properly made a record for appeal. Smith also claimed that he was prejudiced by his trial counsel's actions, both because, if admitted, the evidence would have raised a reasonable doubt as to Smith's guilt and because, if excluded, a timely proffer of the evidence would have made a record for appeal.

As noted above, an evidentiary hearing was held, and after considering the exculpatory testimony of Wayt, the inculpatory statement by Dees, and other evidence obtained during a hearing, the Court of Common Pleas rejected Smith's petition. In rejecting the claim, the trial court cited *Strickland*, and found that the conduct of Smith's trial counsel was neither deficient nor prejudicial.

Smith appealed this decision, claiming that it was not supported by the record. Considering Smith's claim in light of *Strickland*, the Ohio Court of Appeals made the following findings:

> Even assuming that counsel had a duty to call the witnesses in question even though it might have angered the trial judge, this tactic would have been

---

1. Because we vacate the district court's judgment on this basis, we need not reach Respondent Jago's claim that the district court failed to require the defendant to affirmatively prove prejudice on appeal. We note, however, that while the Supreme Court has not yet reached the issue, *see Evitts v. Lucey,* 469 U.S. 387, 392, 105 S.Ct. 830, 833, 83 L.Ed.2d 821 (1985), our court has adopted *Strickland* as the basis for a similar standard for claims of effective assistance of *appellate* counsel. *See Bowen v. Foltz,* 763 F.2d 191 (6th Cir.1985). In *Bowen,* our court addressed the claim that a defendant's counsel during an appeal as of right had failed to challenge an existing rule of criminal law that was subsequently modified by the state's supreme court. In rejecting the claim of prejudice from the error as too speculative, our court restated the prejudice component of *Strickland* to require a showing of a reasonable probability that the result of the appeal would have been different. *Bowen,* 763 F.2d at 194. *Accord Bell v. Lockhart,* 795 F.2d 655, 657–58 (8th Cir.1986); *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1985); *Schwander v. Blackburn,* 750 F.2d 494, 502 (5th Cir.1985). Of course, the instant case does not involve a claim of ineffective assistance of appellate counsel.

questionable at best. Wayt had a lengthy criminal record which would be brought before the jury. The statements of [Smith's codefendants] that Smith was a member of the gang would be devastating to Smith's defense. Finally Dees [sic] testimony that Smith was present at the robbery would have been brought before the jury. All of which would have served to divert the jury's attention from what counsel believed to be a strong alibi defense.

Because the jury would have before them Wayt's testimony that Smith was a member of the gang; Dees' testimony that Smith was with the gang on the night of the robbery; physical evidence linking Smith to [his codefendants] and the robberies; and various eyewitness testimony, it is probable that the result of Smith's trial would not have changed.

Decision and Journal Entry of the Court of Appeals, dated December 25, 1985, Joint App. at 249.

Despite the Ohio Court of Appeals' finding that Smith was not prejudiced, and despite the fact that both courts were applying *Strickland* to the same record, the district court found that Smith was prejudiced by his trial counsel's error. In its March Opinion the district court made its finding of prejudice without any reference to the findings made by the Ohio Court of Appeals. The district court's entire analysis of the prejudice component of *Strickland* was as follows:

> Having established the first component of his constitutional claim, petitioner must now prove that he was prejudiced by his trial counsel's deficient performance.... It is clear to this Court that, but for his trial counsel's failure to preserve the record, "there is a reasonable probability sufficient to undermine confidence in the outcome" of his appeal. The state court of appeals acknowledged that the denial of petitioner's motion to sever by the trial court was erroneous, but nevertheless affirmed petitioner's

conviction on the ground that such error, in light of the apparent failure to introduce the problematic hearsay statement into evidence, was harmless. The fact the trial counsel's constitutional deficiency resulted in prejudice not at trial, but on appeal, does not undermine this otherwise valid constitutional claim.

March Opinion, Joint App. at 357 (citation omitted).

Not surprisingly, Jago filed a Motion to Alter or Amend the March Opinion, arguing that the district court's opinion both ignored and was at odds with the Ohio Court of Appeals' findings in violation of 28 U.S.C. § 2254(d). Moreover, Jago claimed that the Court of Appeals' finding removed the predicate upon which the district court's finding of prejudice was based.[2] In its July Opinion, denying Jago's motion to alter or amend, the district court considered the state appellate court's findings, but declined to rely upon them:

> [R]espondent refers to the fact that the Ohio Court of Appeals subsequently reviewed the proposed exculpatory evidence during the course of petitioner's appeal from the denial of his request for post-conviction relief, and concluded that the testimony would not have changed the outcome of petitioner's criminal trial. It can therefore be assumed, argues respondent, that the Ohio Court of Appeals would have made the same credibility determination on direct appeal even absent trial counsel's failure to preserve the record.
>
> Respondent's assumption, however, also assumes the propriety of the Court of Appeal's credibility determination in connection with Wayt's anticipated testimony.
>
> More significantly, however, respondent's contention also assumes that the state court of appeals' standard of prejudice was the same on both the direct appeal and the appeal from the denial of post-conviction relief. It is not unreason-

---

**2.** In his motion, and again on appeal, Jago argued: "[the district court] cannot find that trial counsel's deficiency resulted in prejudice on appeal—that the court of appeals probably would have found that Smith's defense was prejudiced by the absence of Wayt's testimony—when, in fact, the court of appeals found exactly the opposite—that there was no prejudice."

able to also assume that a court sitting on direct appeal could have found prejudice in the mere fact that, had the motion to sever been granted, the evidence—both for the defense and, possibly, for the prosecution—would have been different. In any event, respondent's contention is in the final analysis, based upon speculation that neither the respondent nor this court can verify.

July Opinion, Joint App. at 376–77 (footnote omitted). In a footnote the district court added:

> At a minimum, Wayt's testimony would have been before the jury for the latter's credibility determination. Moreover, it is altogether possible that petitioner's codefendants would by that time have been rendered available to testify on petitioner's behalf at petitioner's severed trial.

*Id.* at 377 n. 2.

 There is no doubt that, in considering Smith's petition for federal habeas relief, the district court could freely review the state court's legal conclusion that Smith was not denied effective assistance of counsel at his trial. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. Moreover, because both the prejudice and performance components of the *Strickland* ineffectiveness inquiry are mixed questions of law and fact, the district court was free to review the legal conclusions drawn from the factual findings underlying each component. 466 U.S. at 698, 104 S.Ct. at 2070. *Cf. Cain v. Smith,* 686 F.2d 374, 379–80 (6th Cir.1982); *Fowler v. Jago,* 683 F.2d 983, 992 (6th Cir.1982) (mixed questions of law and fact not governed by 28 U.S.C. § 2254(d)).[3] Yet, while the legal conclusions involved are freely reviewable, the credibility findings made by the Ohio Court of Appeals are findings of fact, *Adams v. Jago,* 703 F.2d 978, 980 (6th Cir.1983), subject to the severely restricted review of 28 U.S.C. § 2254(d).[4]

Section 2254(d) in relevant part provides:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue made by a State court of competent jurisdiction in a proceeding to which the application for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct....

28 U.S.C. § 2254(d). The statute places the burden on the petitioner to establish by "convincing evidence" that the state court factual determination is erroneous, unless one of eight specified circumstances exists:

> (1) that the merits of the factual dispute were not resolved in the State court hearing;
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
>
> (3) that the material facts were not adequately developed at the State court hearing;
>
> (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
>
> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
>
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
>
> (7) that the applicant was otherwise denied due process of law in the State court proceeding;

---

3. Likewise, in reviewing the district court's findings we may not set aside its factual findings unless clearly erroneous, Fed.R.Civ.P. 52(a), but we are free to review the legal conclusions drawn from those facts. *See Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *Blackburn v. Foltz,* 828 F.2d 1177, 1181 (6th Cir.1987).

4. It is clear that review by a state appellate court of the trial record constitutes a "hearing" as is contemplated by 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981); *Nichols v. Perini,* 818 F.2d 554, 557 n. 3 (6th Cir.1987).

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....

28 U.S.C. § 2254(d). Moreover, a federal court granting the writ must state in its opinion the reason why it found that one of the first seven factors was present, or the reason why it concluded that the state court's factual determination was not fairly supported by the record. *See Sumner v. Mata*, 449 U.S. 539, 551–52, 101 S.Ct. 764, 771–72, 66 L.Ed.2d 722 (1981); *Nichols v. Perini*, 818 F.2d 554, 557–58 (6th Cir.1987).

■ In this case, the district court failed to include in its opinion any explanation of the reasons behind its decision not to accord the state court's factual findings the presumption of correctness. Indeed, the district court failed to address Jago's section 2254(d) claim at all: the district court made no reference to section 2254(d) or to

any of the eight circumstances listed therein. It appears to us that the court only addressed Smith's claim that the post-conviction review undermined the "predicate" for the court's finding of prejudice. Such a failure by the district court is an additional reason for us to vacate its opinion and to remand for further proceedings, *see Mata*, 449 U.S. at 552, 101 S.Ct. at 771, however, as noted above, because we are satisfied that no further development of the record is necessary, we find such a remand unnecessary in this case. *Cf. Nichols v. Perini*, 818 F.2d at 558.

## IV.

■ After careful review of the record, we first note that we are satisfied that the state court's findings of fact are "fairly supported by the record" and that none of the other seven circumstances listed in section 2254(d) is applicable in this case.[5] Those findings are therefore entitled to a presumption of correctness, a presumption which we conclude has not been rebutted by convincing evidence showing that the factual determinations of the state court were erroneous.[6]

---

5. Smith argues that credibility findings made by a state appellate court, which did not have an opportunity to observe the demeanor of the witness, are not "fairly supported" by the record. While Smith raises a legitimate concern, we are not persuaded by his argument, which would, if accepted, essentially prohibit all appellate credibility determinations in these cases, which inevitably are made on a "paper record." Moreover, to the extent that the concern raised by Smith can be seen as a reason for federal courts to freely redetermine credibility findings because they were made on an identical paper record, we reject such an argument as well, for the deference due the state court's findings are based, in large part, in the notion of federalism. *See Sumner v. Mata*, 449 U.S. at 547, 101 S.Ct. at 769.

6. We also believe that the presumption of correctness attaches to the factual findings made by the Court of Common Pleas during its review of Smith's petition for post-conviction relief. Those findings were:

1. Witness Wayt made inculpatory and exculpatory statements all as stipulated as part of the evidence in support of Defendant's Petition.

2. Jerry Dees, another witness, [sic] for the State but not called at the original trial made

inculpatory statements regard [sic] all three Defendants and as testified at the hearing in opposition of Defendant's Petition.

3. The State or Prosecutor was aware of both statements prior to the trial.

4. The then Counsel for Defendant was not aware of Jerry Dees [sic] statement but was aware of witness Wayt's statement prior to trial.

5. The then Counsel for Defendant was of the belief that the testimony of witness Wayt would be helpful in establishing his alibi and the defense that he was not involved.

6. Counsel for Defendant made known to the Trial Court both before the trial and during the trial the implications and effect of such statements in a joint trial and strenuously argued for separate trials.

7. Counsel for Defendant having incurred the wrath of the Trial Court with the threat of a mistrial after the matter had been tried for some period of time determined to proceed without calling the witness Wayt, believing he had a strong case of alibi irrespective of Wayt's testimony.

8. The testimony of witness Wayt became more important when another witness at the scene of the crime identified the Defendant as one of those involved in the robbery which was contra to Defendant Smith's alibi.

Turning now to the substantive issue and applying the presumption of correctness to the factual determinations of the state courts, we must independently determine whether Smith has met his burden of showing prejudice within the meaning of *Strickland*. In that case, the Supreme Court provided us with some guidance regarding the application of the prejudice component of its analysis. Perhaps most importantly, the Court noted:

> An error by counsel, even if professionally unreasonable does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 691–92, 104 S.Ct. at 2066–67. Although the Court noted that in certain contexts prejudice is presumed, the remaining claims of ineffectiveness are subject to the "general requirement that the defendant affirmatively prove prejudice." *Id.* at 692–93, 104 S.Ct. at 2067. The rationale behind this rule is that "the government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence." *Id.* at 693, 104 S.Ct. at 2067. Finally, the Court set out the standard:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.[7]

Because the error found by the district court—the failure to preserve Wayt's statement for appeal—did not affect the evidence heard by the jury at the original trial, but could only affect the outcome of a new trial after a successful appeal, this analysis can be viewed as operating on the assumption that the Ohio Court of Appeals would have reversed the conviction on direct appeal. There is no doubt in our minds that the evidence presented at Smith's trial was sufficient to support his conviction. While there was no positive eyewitness identification of Smith, the less certain identifications made by witnesses, when combined with the strong circumstantial evidence linking Smith to the crime, are sufficient to overcome any reasonable doubt as to his guilt. Moreover, once we adopt the factual findings of the Ohio Court of Appeals, we do not believe that Wayt's testimony, in light of its dubious credibility and of the other testimony that would have been presented at a severed trial, would be sufficient to raise a reasonable doubt in the minds of the jurors. In reaching this conclusion, we recognize the importance of the credibility determinations involved in the prosecution's case in chief and Smith's alibi defense, but we re-

9. Counsel for Defendant while attempting to blunt this testimony with expert testimony (in other words to discredit the ability of the eyewitness to make the identification) which was proffered; nevertheless, did not call either of the other two Co–Defendants so as to be in a position to proffer the statement of witness Wayt nor to put on Wayt as a witness if same were proper.

10. Counsel for Defendant's failure to call the Co–Defendants to testify or to in any manner proffer the statement or to subpoena witness Wayt to testify was not a part of Counsel's trial tactics in the case.

11. Counsel for Defendant was of the opinion he had a strong alibi defense separate and apart from Wayt's statement.

12. It would be pure conjecture to speculate as to what effort, if any, Counsel for Defendant would have made to secure a separate trial or to secure the introduction of testimony from Wayt before the Jury had such Counsel likewise been aware of the damaging statements of potential witness Jerry Dees, taking into consideration their respective criminal history to wit that witness Wayt had spent a good portion of his life behind bars.

Opinion of Court of Common Pleas, Journalized May 7, 1985, at 3–4.

7. The Court also stated the test as follows: "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69.

main unpersuaded that Smith has met his burden of affirmatively showing prejudice to the outcome of his trial.

Accordingly, the judgment of the district court is REVERSED, and the cause is REMANDED for dismissal of Smith's petition for a writ of habeas corpus.