**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-7954**

_____

HENH CHU NGO,

              Petitioner – Appellant,

       v.

GREGORY HOLLOWAY, Warden, Wallens Ridge State Prison,

              Respondent – Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Leonie M. Brinkema, District Judge.  (1:12-cv-00074-LMB-IDD)

_____

Argued:  December 10, 2013          Decided:  January 17, 2014

_____

Before TRAXLER, Chief Judge, and WILKINSON and DAVIS, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Davis wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson joined.

_____

**ARGUED:** Jonathan P. Sheldon, SHELDON, FLOOD & HAYWOOD, PLC, Fairfax, Virginia, for Appellant. Craig Stallard, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Kenneth T. Cuccinelli, II, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Petitioner-Appellant Henh Chu Ngo, a Virginia inmate, appeals the district court's denial of his federal habeas petition filed under 28 U.S.C. § 2254. Because we agree with the district court that the state court did not make unreasonable findings of fact or unreasonably apply clearly established federal law, 28 U.S.C. §§ 2254(d)(1-2), we affirm.

I.

A.

In August 2005, Ngo was indicted on charges of murdering Ngoc Quy Doan Nguyen ("Quy") and using a firearm during the commission of a felony. The evidence supporting the case against Ngo came primarily from the testimony of Phuc Nguyen ("Phuc") and Hoan Minh Le ("Le"), who were present when Quy was shot. Ngo pled not guilty and the case proceeded to trial.

On the first day of Ngo's three-day trial, Phuc testified that, on the evening of December 27, 2002, he, Le, and Quy were leaving a pool hall when two men approached them and asked whether they were affiliated with a certain gang, Asian Young and Dangerous ("AYD"). Phuc denied affiliation with AYD, but did not hear the responses of Quy and Le. According to Phuc, members of AYD had recently attacked Ngo, a member of Asian Dragon Family ("ADF"), a rival gang.

2

Phuc, Le, and Quy then got into Quy's car, when Quy remembered that he had left his eyeglasses in the pool hall. While Quy went to retrieve them, Ngo approached Quy's car, where Phuc was seated in the front passenger seat with Le seated behind him. Ngo motioned for Phuc to roll down his window, but Phuc refused because Ngo's right hand was concealed suspiciously in his coat.

Ngo then walked to the front of Quy's car as Quy returned from inside the pool hall. As Quy opened the driver's door, Ngo again asked whether Quy was affiliated with AYD. Phuc did not hear Quy's response, but immediately heard gunshots, causing him to duck behind the dashboard. Ngo's first shot struck Quy in the head while the next two shots went through the car's windshield.

When police officers arrived at the scene fifteen to twenty minutes later, Phuc told them that Ngo shot Quy. Phuc testified that he was familiar with Ngo from having seen him around their community and that Ngo was heavyset and had a tattoo. Phuc also testified that he identified Quy's shooter in photographic line-ups while at the police station later that evening. On cross-examination, Phuc admitted that Le had made several phone calls before calling 911 after Quy was shot, and that, contrary to his earlier testimony, he had previously denied hearing the substance of Ngo's comment to Quy before he shot him.

3

Numerous other officers described the evidence at the scene of Quy's shooting in a manner consistent with Phuc's account of the event, including the location of shell casings, the bullet holes in Quy's car, and the condition of Quy's body.

Officer Curtis Cooper then recounted the statements Phuc made to him at the scene of Quy's murder and at the police station later that evening. Defense counsel objected to this testimony as inadmissible hearsay; the trial court overruled the objection. The trial court reasoned that the testimony could be admitted as prior consistent statements for the purpose of credibility determinations. The court also issued a limiting instruction to the jury, stating that the testimony was "not being elicited for the truth of what Mr. Phuc Nguyen told him but just as it might affect your determinations about Mr. Nguyen . . . your determination of his credibility." J.A. 154.

Officer Cooper went on to testify that, at the police station, Phuc identified Ngo, by his nickname, as Quy's killer and related in detail the events surrounding the crime. On cross examination, defense counsel questioned Officer Cooper extensively regarding Phuc's prior statements, and Cooper acknowledged that Phuc initially denied knowing who shot Quy.

On the second day of trial, Le testified regarding the events surrounding Quy's murder; that testimony was substantially similar to Phuc's. There were some inconsistencies

4

between Phuc and Le's testimony, however, such as Le's testimony that Ngo's left hand was inside his jacket when he approached Quy's car, while Phuc testified that it was Ngo's right hand. Le also testified that (1) he knew Ngo from seeing him on prior occasions around their community; (2) Ngo was a member of ADF; and (3) Ngo was heavyset and had a dragon tattoo on his arm.

Describing his interaction with law enforcement on the night of the shooting, Le said he told police officers who the shooter was and identified Ngo in a photographic line-up. Le also testified that (1) members of AYD had attacked Ngo several weeks before Quy's murder; (2) he called two members of AYD before calling 911 after Quy was shot; and (3) that he lied to the police regarding his affiliation with AYD.

Next, Detective Chad Ellis testified about his interaction with Le at the scene of Quy's murder. Detective Ellis stated that Le identified Ngo, a "big person," as Quy's shooter and described the events surrounding the crime in a manner consistent with Le's testimony at trial. Defense counsel made no objection to Ellis' testimony, even though it raised the same hearsay concern as Officer Cooper and Detective Allen's testimony.

Finally, Detective David Allen testified that he spoke with Phuc and Le at the police station later on the night Quy was shot, and that both Le and Phuc identified Ngo from a

5

photographic line-up. Defense counsel objected to the admission of Allen's testimony regarding what Le had told him. The trial court determined that Le's statements to Detective Allen were admissible as prior consistent statements to rehabilitate Le's previously impeached testimony. Detective Allen then testified that, when he interviewed Le, Le described the events surrounding Quy's shooting in a manner consistent with Le's testimony at trial.

On March 23, 2006, the jury found Ngo guilty on both counts. The jury sentenced Ngo to 23 years for murder in the first degree, and three years for use of a firearm in the murder, to run consecutively for a total of 26 years.

Ngo appealed his conviction, claiming that the trial court erred in admitting the testimony of Officer Cooper and Detective Allen. Accepting the Commonwealth's concession of error, the Virginia Court of Appeals ("VCOA") nonetheless affirmed Ngo's conviction, finding that any error was harmless. Ngo v. Commonwealth, No. 1671-06-4, slip op. at 1 (Va. Ct. App. June 17, 2008). The court noted that while the evidence of Ngo's guilt was not overwhelming, the improperly admitted hearsay was cumulative of other uncontested evidence, namely the eyewitness testimony, photographic identification, and the testimony from Detective Ellis to which trial counsel failed to object. The Virginia Supreme Court denied Ngo's petition for appeal. Ngo v.

6

<u>Commonwealth</u>, No. 082065 (Va. Mar. 10, 2009), <u>reh'g denied</u> (Va. Apr. 24, 2009).

B.

In April 2010, Ngo sought post-conviction relief in state court, claiming, in pertinent part, that trial counsel was ineffective for not objecting to the photographic line-up and the Ellis hearsay. Ngo argued that counsel's neglect provided the VCOA with the basis on which to find harmless error on direct appeal. After a hearing, the state court denied the petition, finding that trial counsel's omissions did not prejudice Ngo. <u>Ngo v. Commonwealth</u>, No. CL-2010-6101, slip op. at 5 (Va. Cir. Ct. May 18, 2011). The court explained that "there was substantial evidence of [Ngo's] guilt, including [Phuc and Le's testimony]" and that their "testimony was corroborated by other evidence in addition to the hearsay evidence that was erroneously admitted." J.A. 66-67.

The Virginia Supreme Court denied Ngo's petition for appeal. <u>Ngo v. Commonwealth</u>, No. 111512 (Va. Oct. 27, 2011).

C.

In January 2012, Ngo filed a 28 U.S.C. § 2254 petition in the Eastern District of Virginia. In his petition, Ngo alleged that trial counsel rendered deficient performance by not objecting to each instance of inadmissible hearsay, specifically the testimony of Detective Ellis. Ngo asserted that counsel's

7

carelessness prejudiced him in two distinct ways: it undermined confidence in the jury's verdict and it precluded a successful direct appeal.

Rejecting each of Ngo's contentions, the district court determined that the state post-conviction court's finding regarding the sufficiency of the evidence was supported by the fact that Phuc and Le's accounts of Quy's murder were very similar. Further, the court noted that Phuc and Le's testimony was corroborated by the physical evidence at the scene of the crime and by police officer testimony regarding Ngo's tattoos and heavy build.

The district court also determined that Ngo could not show prejudice because the bolstering testimony to which counsel failed to object was cumulative of the improperly admitted hearsay to which counsel raised a proper objection but was overruled. Accordingly, the district court dismissed Ngo's petition.

We granted Ngo's request for a certificate of appealability as to one issue: whether Ngo's counsel was constitutionally ineffective in failing to consistently object to the improper admission of hearsay during Ngo's trial.

II.

We review a district court's dismissal of a habeas petition de novo, keeping in mind the constraints of 28 U.S.C. § 2254.

8

See Muhammad v. Kelly, 575 F.3d 359, 367 (4th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we cannot grant relief unless the state court's final decision on the merits

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Moore v. Hardee, 723 F.3d 488, 495 (4th Cir. 2013).

## A.

Ngo first contends that the state post-conviction court made an unreasonable determination of the facts. We presume that the state court's factual findings are sound unless Ngo "rebuts the 'presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).

Ngo insists that the state court erred by finding that there was substantial evidence and that the eyewitness testimony was corroborated by other evidence. But Ngo has not shown by clear and convincing evidence that the state court was incorrect (to say nothing of "unreasonable") to credit the two eyewitnesses, including their photographic identifications of

9

him as the shooter, as corroborated by Detective Allen, as well as their in-court identifications. Ngo attempts to negate the effect of the eyewitness testimony by highlighting minor inconsistencies in the testimony of the two witnesses. The record reflects that Le and Phuc testified to a substantially similar series of events, and both identified Ngo at a photographic lineup following the murder and later in court. Their unwavering identification of Ngo would be sufficient on its own, but there is also corroborating testimony of their photographic identification from Detective Allen, as well as physical evidence that supports the eyewitness testimony (albeit not their identification of Ngo as the shooter). We agree with the district court that Ngo has not offered anything that would amount to the clear and convincing evidence necessary to overcome the presumption in favor of the state court's factual findings.

B.

Ngo next contends that the state post-conviction court unreasonably applied clearly established federal law. A state court's decision is objectively unreasonable under AEDPA where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of [the particular] case, or if the court is unreasonable in refusing to extend the governing legal principle to a context in which the principle

10

should have controlled." <u>Barbe v. McBride</u>, 521 F.3d 443, 543-54 (4th Cir. 2008) (internal quotation marks omitted).

Ngo does not dispute that the state post-conviction court applied the correct test as dictated by <u>Strickland v. Washington</u>, 466 U.S. 668, 690-94 (1984). "Where a habeas corpus petition alleges ineffective assistance of counsel, we review the claim not only through the strictures of the AEDPA but also 'through the additional lens of <u>Strickland</u> and its progeny.'" <u>Hardee</u> at 495-96 (quoting <u>Richardson v. Branker</u>, 668 F.3d 128, 139 (4th Cir. 2012)). <u>Strickland</u> lays out a two-part test for a petitioner to demonstrate that he did not receive the effective assistance of counsel: first, that the petitioner's counsel's performance was "outside the range of professionally competent assistance"; and second, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 690-94; <u>Winston v. Pearson</u>, 683 F.3d 489, 504-05 (4th Cir. 2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

We will focus our analysis on the prejudice prong, as that is where the state post-conviction court rested its determination. <u>See</u> <u>id.</u> at 697 (stating that "a court need not determine whether counsel's performance was deficient before

11

examining the prejudice suffered by the defendant as a result of the alleged deficiencies").[1] At the outset, Ngo asks us to decide if, when a habeas petitioner raises a question of ineffective assistance of trial counsel for failing to preserve an issue for direct appeal, our prejudice analysis looks to whether the outcome of the direct appeal would have been different, or if the outcome of the original trial must be called into question. While this is an interesting issue,[2] this case does not require us to decide it; Ngo's claim fails either way.

We agree with the district court that the state post-conviction court did not unreasonably apply clearly established

---

[1] We do note, however, that the prosecution conceded the error made by counsel in the state court proceedings. The Warden now attempts to argue that the state trial court was <u>not</u> in error in admitting the disputed testimony. We need not decide whether lawyers for the Commonwealth of Virginia may have it both ways in this fashion.

[2] The federal appellate courts are split on this issue. <u>Compare</u> <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (rejecting prejudice analysis which relies on a different outcome on appeal as opposed to the entire criminal proceeding), and <u>Smith v. Jago</u>, 888 F.2d 399, 405 (6th Cir. 1989) (same) <u>with</u> <u>Parker v. Ercole</u>, 666 F.3d 830, 834-35 (2d Cir. 2012) (conducting a <u>Strickland</u> analysis on whether outcome on appeal would have been different had trial counsel preserved the objection), and <u>Gov't of Virgin Islands v. Forte</u>, 865 F.2d 59, 64 (3d Cir. 1989) ("While we realize that ordinarily the <u>Strickland</u> principles are advanced when the contention is made that the trial cannot be relied upon to have produced a just result, we see no logical reason why they should not be applicable when the defendant was denied a just result on appeal because of the ineffectiveness of his attorney at the trial.").

federal law as there is not a reasonable probability that either the outcome of the trial, or the direct appeal, would have been different had Ngo's trial counsel objected to the admission of Detective Ellis' testimony.

Ngo has not shown that if his trial counsel had acted differently, there is a reasonable probability that his trial outcome would have changed. During the trial, the judge ruled on the admission of two very similar witnesses, Officer Cooper and Detective Allen, on the same grounds of hearsay. Ngo does not suggest, and nothing else indicates, that the judge would have ruled differently on the admission of Detective Ellis' testimony. Moreover, even if the judge had sustained an objection (had one been made) to the Ellis testimony, the content of his testimony – corroborating Le's story of the shooting and Le's identification of Ngo as the shooter – already was presented to the jury through Le's own testimony, its similarity to Phuc's testimony, and the corroboration of Phuc's testimony from the other police officers whose testimony was allowed over defense counsel's objections. Ngo's speculative argument that it was the singular power of the Ellis testimony that tipped the credibility of Le and Phuc in favor of the prosecution is just that, speculation, and the district court was right to reject it.

Nor has Ngo shown a reasonable probability that the outcome would have been different on direct appeal. The VCOA held that the admission of the testimony, over objection, from Officer Cooper and Detective Allen was harmless error, as it was "merely cumulative of other, undisputed evidence." J.A. 37. Among the pieces of the other, undisputed evidence, the VCOA cited to was Detective Ellis' testimony, the basis now asserted for trial counsel's ineffectiveness. Ngo contends that without this piece of evidence, which would not have received the appellate court's consideration in its harmlessness analysis but for trial counsel's failure to object to its admission, there was not an adequate basis for the VCOA to find the admission of hearsay testimony harmless error. Thus, he contends, he likely would have obtained a reversal on appeal and a new trial. We disagree.

As we reason above, Ngo overstates the significance of Detective Ellis' testimony. While the VCOA did rely on it, the testimony was just one of several pieces of evidence, as we have discussed: even after removing Detective Ellis' testimony, there still remains Phuc and Le's testimony that Ngo was the shooter, including their out-of-court and in-court identifications; Detective Allen's testimony that Phuc and Le identified Ngo in the photographic lineup (which was certainly admissible under Virginia law); and the physical evidence regarding the location

14

of shell casings and the bullet holes in Quy's car, which align with Phuc and Le's testimony.

In short, Ngo has failed to show that but for his trial counsel's failure to object, the outcome of either his direct appeal or his trial would have been different. We agree with the district court that the state post-conviction court did not unreasonably apply clearly established federal law in coming to this same conclusion.

### III.

For the reasons stated above, the judgment of the district court is

AFFIRMED.