RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES NICK HARRISON,

　　　　　*Petitioner-Appellant,*

　　　*v.*

JOHN MOTLEY, Warden, Eastern Kentucky
Correctional Complex,

　　　　　*Respondent-Appellee.*

No. 04-6157

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 03-00497—Jennifer B. Coffman, District Judge.

Argued: December 8, 2006

Decided and Filed: February 23, 2007

Before: BATCHELDER and GRIFFIN, Circuit Judges; PHILLIPS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Salim A. Kafiti, JONES DAY, Cleveland, Ohio, for Appellant. Susan Roncarti Lenz,
OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Eric
C. Chaffee, JONES DAY, Cleveland, Ohio, for Appellant. Susan Roncarti Lenz, OFFICE OF THE
ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

_____

## OPINION

_____

　　　GRIFFIN, Circuit Judge. Appellant James Harrison, a Kentucky state prisoner convicted
of Murder With Aggravating Circumstances, appeals a district court judgment dismissing his
petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Harrison was represented by two
attorneys at his criminal trial, and argues that he received ineffective assistance of counsel at trial
due to conflicts that arose between his attorneys, due to his attorneys' alleged failure to call certain
witnesses to testify at trial, and due to his attorneys' alleged failure to fulfill promises made to the

---

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting
by designation.

1

jury during opening statements.  For the reasons below, we affirm the district court's dismissal of Harrison's habeas petition.

I.

On October 1, 1986, Harrison was convicted by a Madison (KY) Circuit Court jury of Murder With Aggravating Circumstances following the shooting death of Robert Walker, Police Chief of Irvine, Kentucky.  Although charged with a capital offense, Harrison was sentenced to a term of life imprisonment, without the privilege of parole for twenty-five years.  The Kentucky Supreme Court affirmed Harrison's conviction on November 25, 1987.  Harrison then moved the trial court to vacate his conviction and sentence, alleging that he was provided ineffective assistance of counsel due to his attorneys' conflict.  The court denied Harrison's motion.

Before his trial, Harrison's attorneys, Max Smith and J. Campbell Cantrill III, gathered statements from alibi witnesses in preparation for a defense that he was not the shooter.  As trial approached, witness Becky Johnson recanted her proposed testimony, claiming that Harrison's wife had attempted to bribe her in order to provide an alibi for Harrison.  Despite Johnson's recantation, Harrison's attorneys decided to continue with their alibi defense.  During his opening statement, Cantrill told the jury that another man was operating Harrison's car at the time of the murder and that Harrison was not present at the crime scene.

After trial commenced, the second proposed alibi witness also recanted, claiming that attorney Smith had attempted to bribe him for his testimony.[1]  As the Commonwealth's case closed, Cantrill worked with Harrison and his wife to prepare them to testify at trial.  He found their testimony troublesome, however, as it became inconsistent and often changing.  These cumulative witness problems created a rift between Smith and Cantrill, as they disagreed over whether to call the remaining witnesses to testify at trial.  On September 15, Smith filed a motion to withdraw as counsel, claiming that he could not represent Harrison and comply with the ethical codes of the Kentucky Bar Association.  Cantrill also orally moved to withdraw, claiming the same grounds.  The trial court denied both motions to withdraw.[2]

After these alibi witnesses recanted, other potential witnesses remained available to testify, but none provided an alibi for Harrison at the time of Chief Walker's murder.  The attorneys presented Harrison with their differing opinions regarding the witnesses, and Harrison ultimately decided not to call any witnesses on his behalf.  Harrison was subsequently convicted of Murder With Aggravating Circumstances and sentenced to a term of life imprisonment, without the privilege of parole for twenty-five years.

---

[1]Smith denied the allegation of bribery and was neither investigated nor charged in connection with the allegation.  In denying Harrison's post-trial motion for a new trial, the trial court described this allegation as "palpably false," noting that Smith did not even represent Harrison at the time the recanted statement was made.

In addition, a third allegation of attempted bribery by the defense arose before trial.  On August 25, 1986, the Commonwealth filed a motion for protective order that alleged that Thurman Misenheimer, a private investigator hired by Harrison's attorneys, harassed a prospective witness and attempted to bribe her.  Misenheimer was later indicted for attempting to induce prosecution witness Mildred Schuler not to testify at trial.

[2]On September 18, after Misenheimer was indicted for attempted bribery, Smith again sought to withdraw from representing Harrison, claiming that he would not permit certain defense witnesses to testify for Harrison and that there would be conflict between defense counsel in conducting cross-examination of prosecution witnesses.  On September 29, Smith renewed his motion to withdraw based on witness Dino Townsend's allegations that Smith had attempted to bribe him.  The trial court denied Smith's motion to withdraw and ordered the trial to go on.  During an in-chambers hearing on September 30, both Smith and Cantrill moved for a mistrial based on the trial court's failure to grant their request to withdraw.  These motions were denied.

On appeal of the trial court's denial of Harrison's motion to vacate, the Kentucky Court of Appeals remanded Harrison's motion to the Madison Circuit Court to conduct an evidentiary hearing. The Madison Circuit Court held an evidentiary hearing on April 28-29, 1999, receiving testimony from fourteen witnesses. On August 24, 1999, the court issued a twenty-three page order denying Harrison's motion to vacate judgment. In its order, the Madison Circuit Court summarized the evidence admitted against Harrison at trial as follows:

> At the trial, the Commonwealth presented evidence of a shooting incident in 1985 at the defendant's home where both Chief Walker and the defendant were seriously injured. The defendant was charged with the assault of Chief Walker.

> Delores Gail Jones testified that prior to the Chief's death, the defendant told her that he was going to kill the Chief. Kenny Plowman testified that on February 16, 1986, shortly before the murder, the defendant told him that he would like to get a chance to follow Chief Walker and "blow his head off."

> Hazel Roberts testified at trial that she saw the shooting by a person driving a little white colored car.

> Witnesses testified that on the day of the murder, they saw the defendant alone driving his small white or beige car before, during and after the murder.

> Mildred Schuler identified the defendant as the person she saw commit the murder and that he alone was in the vehicle at the time, and that she recognized him, but didn't know his name at the time. During the investigation, she identified the defendant from a photographic line-up and then affirmed the identification at trial.

> Ms. Schuler testified that at the time of the Chief's murder, her ex-husband Hubert Chaney's truck was at the scene and sped off. She also testified that Chaney had been [harassing] her.

> However, the undisputed testimony of Hazel Roberts was that the person driving the little white colored car shot Chief Walker. The evidence adduced at trial is overwhelming – the individual driving the small, light-colored vehicle (identified later by Schuler as the defendant) murdered Chief Walker; and the broken tail lights found at the scene fit the broken tail lights on the defendant's small, light-colored vehicle.

> Robert Lee Dixon testified that the defendant told him, "I shot Bob Walker" at approximately 1:30 p.m. on the day of the Chief's murder. Kenneth Jones observed the two holding a conversation that afternoon.

> Billy Norton testified that the defendant told him, "I shot ole Bob" with a .38 five times, and then threw the gun off of the Irvine bridge. Neddie Powers heard the defendant tell Norton that he killed the Chief with a .38 and threw the gun in the river.

> Physical evidence was produced at trial that proved the defendant's vehicle was the vehicle that collided with Chief Walker's vehicle during the shooting that resulted in the Chief's death. Kentucky State Laboratory personnel identified the bullets taken from the Chief's body as those that can be fired with a .38 Smith and Wesson revolver and a photograph was produced showing the defendant in possession of such a handgun.

> In summary, the Commonwealth's presentation provided overwhelming evidence of the defendant's guilt.

On March 29, 2002, the Kentucky Court of Appeals affirmed the denial of Harrison's motion to vacate. On November 13, 2002, the Kentucky Supreme Court denied Harrison's request for discretionary review concerning his motion to vacate.

Harrison filed this federal habeas petition in the Eastern District of Kentucky on November 10, 2003. The United States Magistrate Judge adopted the findings made by the Madison Circuit Court following the April 1999 evidentiary hearing and recommended that Harrison's habeas petition be dismissed. On September 1, 2004, the district court adopted the magistrate's findings of fact and dismissed Harrison's petition. The district court granted a Certificate of Appealability on the issues of whether Harrison was denied his rights to testify and to effective assistance of counsel. Upon Harrison's motion, we expanded the Certificate of Appealability to include Harrison's claim that his attorneys were ineffective for failing to call defense witnesses and for failing to fulfill promises made to the jury in opening statements. We also appointed Harrison counsel to represent him in this appeal.

II.

In evaluating a petition for habeas corpus, we review the district court's legal conclusions de novo and its factual findings for clear error. *Stallings v. Bobby*, 464 F.3d 576, 580 (6th Cir. 2006); *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). Because Harrison filed his petition in 2003, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies. *Stallings*, 464 F.3d at 580. Under the AEDPA, a federal court may grant a writ of habeas corpus only if the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2). The Supreme Court has explained that a state court decision is "contrary to" federal law under the AEDPA standard "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The Court has explained further that a decision is an "unreasonable application" of federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Harrison first contends that, due to the conflict that arose between Smith and Cantrill, he was de facto denied his right to counsel to offer a defense at trial. Harrison relies on *United States v. Cronic*, 466 U.S. 648 (1984), to argue that prejudice to Harrison's defense should be presumed and that Harrison need not show how specific errors made by his counsel undermined the reliability of the jury's finding of guilt.

In *Cronic*, the Court considered whether a defendant's Sixth Amendment right to counsel was denied where the defendant was appointed a young real estate lawyer to represent him, allowing the lawyer only twenty-five days for pretrial preparation. *Cronic*, 466 U.S. at 649. In discussing the necessity for adequate representation to ensure the adversarial process that the Sixth Amendment envisions, the Court noted that, although a defendant generally bears the burden of showing that the

challenged conduct actually prejudiced the defendant, there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. The Court identified at least two instances where "surrounding circumstances justify a presumption of ineffectiveness" – (1) where "the accused is denied counsel at a critical stage of his trial," and (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing . . . ." *Id.* at 659, 662. Harrison's claim is focused on the first instance; he contends that prejudice should be presumed because the conflict that arose between Smith and Cantrill effectively left Harrison without the aid of counsel as he prepared his defense at trial.

Harrison's argument is without merit. First, although Harrison claims that his attorneys refused to put on a defense at trial, the Kentucky state courts found that "Harrison was faced with conflicting advice by his attorneys concerning whether he should take the stand to testify in his own behalf and whether witnesses should be called" and that Harrison ultimately "elected not to testify or have other witnesses called."[3] The Madison Circuit Court found that Smith and Cantrill presented differing concerns and strategies regarding potential defense witnesses and stated that "the trial record is clear that ultimately, [Harrison] made an informed and considered decision not to present a defense at the guilt or innocence stage." Harrison has not offered any evidence that suggests this finding was clear error.

Moreover, neither *Cronic* nor the cases it cites provide support for Harrison's argument that he was left without counsel due to his attorneys' conflicting advice. In support of its assertion that prejudice is presumed where the accused is denied counsel at a "critical stage" of his trial, the *Cronic* court cited the following cases: *Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612-13 (1972); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *Ferguson v. Georgia*, 365 U.S. 570 (1961); *Williams v. Kaiser*, 323 U.S. 471, 475-76 (1945). *Cronic*, 466 U.S. at 659 n.25. As the Court acknowledged in its citation to the above opinions, these cases involve claims that "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* In *Geders*, for example, the Court found a trial court ruling that sequestered the testifying defendant and prevented the defendant from conferring with his attorney during an overnight recess denied the accused the "guiding hand of counsel." *Geders*, 425 U.S. at 89 (quoting *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932)). Likewise, in *Herring*, the Court found that a procedural rule which allowed the trial court to deny the defendant's counsel the opportunity to make a final argument to the jury denied the defendant his right to the assistance of counsel. *Herring*, 422 U.S. at 863. Similarly, the Court found in *Brooks* that a procedural rule which required testifying criminal defendants to testify before any other defense witnesses infringed on an accused's right to confer with counsel. *Brooks*, 406 U.S. at 612-13. In *Hamilton* and *White*, the Court held that a defendant's Sixth Amendment rights are violated where he is denied access to counsel during arraignment. *Hamilton*, 368 U.S. at 55; *White*, 373 U.S. at 60.

These cases do not apply to the present situation. Harrison was never denied access to his attorneys, neither during trial preparations nor after trial had commenced. Harrison argues that because he had to consider conflicting advice from his attorneys and decide whether to testify himself and present any other witnesses, he was effectively left without counsel. As the Court has noted, however, defense counsel has an obligation to discuss potential strategies with his client and a criminal defendant is often called upon to consult with his attorney and decide whether to present a defense and whether to testify himself. *Florida v. Nixon*, 543 U.S. 175, 178 (2004); *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993) (noting that "*all* criminal defendants . . . may be required to make important decisions once criminal proceedings have been initiated," including whether to take

---

[3]The findings of fact were made by the Madison Circuit Court following the April 1999 evidentiary hearing. The Kentucky Court of Appeals adopted the Madison Circuit Court's findings of fact.

the stand himself, whether – and how – to present a defense, and whether to raise affirmative defenses). That Harrison was ultimately responsible for deciding whether to testify himself or to call certain defense witnesses did not render him without the aid of counsel.

Harrison also cites the Supreme Court's decisions in *Holloway v. Arkansas*, 435 U.S. 475 (1978), and *Cuyler v. Sullivan*, 446 U.S. 335 (1980), to support his contention that he is entitled to a presumption of prejudice. Both *Holloway* and *Cuyler*, however, involve an attorney's concurrent representation of multiple criminal co-defendants whose interests were in conflict at trial. *See Holloway*, 435 U.S. at 488-89 (holding that presumption of prejudice applies where trial court, over timely objection, improperly requires joint representation of co-defendants with conflicting interests); *Cuyler*, 446 U.S. at 349-50 (holding that no presumption of prejudice arises unless defendant "shows that his counsel actively represented conflicting interests"). This case does not involve any such joint representation of co-defendants with conflicting interests, and so we find that neither *Holloway* nor *Cuyler* are applicable.

Because Harrison was advised by counsel throughout the proceedings and neither *Cronic*, *Cuyler*, nor *Holloway* suggest that a presumption of prejudice is appropriate here, Harrison must show both that his attorneys' representation was objectively unreasonable and that their allegedly deficient performance prejudiced Harrison's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice, Harrison must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We conclude that Harrison cannot satisfy either prong of the *Strickland* test.

Harrison argues that Smith and Cantrill had a conflict of interest in representing him, alleging that each attorney was "subject to a conflict of interest based on their fears of criminal prosecution and malpractice for witness tampering." Although a conflict of interest may arise where defense counsel is subject to a criminal investigation, *see Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993), we have noted previously that "[t]here lacks any controlling authority to support the proposition that an attorney's *fear* of investigation may give rise to a conflict of interest." *Moss v. United States*, 323 F.3d 445, 473 (6th Cir. 2003) (emphasis added). There is no evidence in the record to suggest that either Smith or Cantrill were ever criminally investigated for their representation of Harrison, nor did Harrison ever inform the trial court that he had a conflict of interest with either Smith or Cantrill. Smith's and Cantrill's concerns over being indicted or sued as a result of their representation of Harrison did not, therefore, give rise to a conflict of interest. Rather, we agree with the Kentucky Court of Appeals that Harrison's case "was not one involving a conflict of interest but was one involving a personal conflict between [his] attorneys."

Harrison has also failed to show that his attorneys' alleged conflict of interest resulted in prejudice. As the Madison Circuit Court concluded, the evidence admitted against Harrison at trial was "overwhelming." Moreover, as discussed *infra*, the evidence that Harrison argues should have been offered at trial was far from convincing and was not likely to lead to a different result. We conclude, therefore, that the Kentucky Court of Appeals' opinion was not contrary to, nor involved an unreasonable application of, clearly established federal law as interpreted by the Supreme Court.

III.

Harrison next argues that his attorneys provided ineffective assistance of counsel in failing to call him and other potential defense witnesses to testify on his behalf. This argument also lacks merit. As discussed *supra*, the Madison Circuit Court found that, while Cantrill was preparing Harrison and his wife to testify, Harrison offered inconsistent accounts of the day of the murder. Cantrill subsequently advised Harrison not to testify; Smith recommended otherwise. The court found that Harrison was provided with advice from both Cantrill and Smith and that he made the decision himself not to testify. The magistrate judge and district court adopted this finding, and

Harrison has not offered any argument or evidence on appeal to suggest that the Madison Circuit Court's finding was clear error. Harrison, therefore, cannot claim that he was deprived of the opportunity to testify.

Likewise, Harrison cannot argue that his attorneys provided ineffective assistance of counsel by failing to call any witnesses to testify on Harrison's behalf. The Madison Circuit Court found that Harrison's attorneys presented him with conflicting advice as to whether he should call any other witnesses to testify, and Harrison "made an informed and considered decision not to present a defense at the guilt or innocence stage." On appeal, Harrison has not presented any evidence, or made any argument, to demonstrate that this finding was clear error.

Moreover, the evidence that Harrison now argues should have been offered at trial was problematic. Witnesses Becky Johnson and Dino Townsend would not have supported Harrison's defense, as they had each recanted their proposed alibi testimony. Harrison contends that his attorneys should have called Robert Norton to authenticate a letter from Harrison's uncle, Billy Norton, in which Billy Norton confessed to the murder of Chief Walker. The letter was inadmissible, however, as the trial court found the letter to be patently fraudulent and stated that the letter was an insult to the court system. Furthermore, Robert Norton did not testify at the evidentiary hearing, so any conclusion as to the substance or effect of his testimony would be speculation. Harrison also argues that his wife, Delphine Harrison, could have presented evidence that Billy Norton killed Chief Walker. Delphine Harrison had been accused of bribing another witness for favorable testimony, and Cantrill testified at the evidentiary hearing that she had subsequently become scared to testify. Thus, even had Delphine Harrison testified, her reliability may have been called into question due to the allegations of bribery.

Harrison also argues that his attorneys should have called Wes Farley and Ruby Lynch to provide evidence that the ex-husband of prosecution witness Mildred Schuler had killed Chief Walker. In the summer of 1988, both Farley and Lynch signed affidavits in which they claim that Mildred Schuler told them that her ex-husband, Hubert Chaney, had killed Chief Walker. Farley testified at the evidentiary hearing, however, that Schuler did not make any comments to him about Hubert Chaney. Moreover, any testimony offered by Farley or Lynch as to what Schuler told them would be inadmissible hearsay and would therefore not affect the jury's determination of guilt.

Finally, Harrison argues that his attorneys should have called his father and brother, James B. Harrison and Wayne Harrison, to provide a partial alibi for the day of the murder. The Madison Circuit Court heard testimony from these witnesses at the evidentiary hearing and concluded that "they do not provide an alibi for the defendant at the time of Chief Walker's murder." Harrison has not satisfied either prong of the *Strickland* test; he has not shown that his attorneys provided ineffective assistance of counsel by giving him conflicting advice about calling defense witnesses, and he has not demonstrated that the failure to call these witnesses prejudiced his defense.

IV.

Finally, Harrison argues that he was denied effective assistance of counsel due to his attorneys' failure to fulfill a promise made to the jury at opening statements that he would provide an alibi defense. This argument, too, lacks merit.

Harrison cites *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990), to support his argument that the failure to fulfill promises made during opening statements constitutes deficient representation.[4]

---

[4]Because it is unnecessary to decide the issue to resolve this case, we express no opinion as to whether the failure to fulfill promises made during opening statement, by itself, is a "clearly established" basis for a claim of ineffective assistance of counsel.

*Harris* is factually inapposite to this case. In *Harris*, the defendant Harris was arrested and charged with the shooting of Ernest Howard on the south side of Chicago. *Harris*, 894 F.2d at 872. Harris's public defender assured the jury during opening statements that they would hear evidence that another person, not charged, was the initial suspect of the police and the likely shooter. *Id.* at 873. After the prosecution rested, however, the defendant's counsel – believing that he had successfully impeached the prosecution's witness and that the case against Harris was weak – declined the opportunity to call two unbiased witnesses who had each independently identified the other suspect during the police's initial investigation into the shooting. *Id.* at 874, 878. The Seventh Circuit found the public defender's failure to present a defense to be constitutionally deficient representation. *Id.* at 878. The court noted that, although the public defender may have believed the prosecution's evidence against Harris was slight, his decision not to offer these witnesses was unreasonable:

> In the opening, counsel showed an understanding that the [second suspect] theory, if believed, would account for the strange investigative turn taken in this case. If the jury was willing to credit the testimony of [the defense witnesses], it would have further discredited [the prosecution witness's] account, augmented the cross-examination of [the prosecution witness], and provided the jury with a viable basis for clinging to the presumption that Harris was innocent. There is little objective reason to believe that the jury would not credit the testimony of [the defense witnesses]. They were contacted by the police soon after the incident. They were unbiased witnesses whose account of what they saw largely corroborated each others'. Finally, both witnesses positively identified [the second suspect] as the man (or one of the men) they saw fleeing from the scene.

*Id.*

In contrast, the recantations, allegations of bribery, and inconsistent testimony by Harrison's proposed witnesses provided a reasonable justification for declining to present them as witnesses. At the evidentiary hearing, attorney Smith testified that because Harrison faced the possibility of receiving the death penalty, Harrison's attorneys were concerned that recanting witnesses and allegations of misconduct would be viewed unfavorably by the jury and make it more likely that Harrison would receive the death penalty if Harrison was convicted. Under these circumstances, the failure to present these witnesses, despite the allusion to an alibi defense during opening statements, was objectively reasonable. Moreover, as discussed *supra*, the failure to put on defense witnesses was not due to inattentiveness by Harrison's attorneys, but rather the result of recanting and inconsistent witnesses and the product of an informed, deliberate decision made by Harrison himself.

V.

The district court's denial of Harrison's habeas petition is affirmed.