GRIFFIN, Circuit Judge,
dissenting.
Once again, our court has failed to afford a state criminal judgment the deference required by law.[1] Because the Court of Criminal Appeals of Tennessee (“CCAT”) did not unreasonably apply Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), I would affirm the district court’s denial of the petitions for writs of habeas corpus. Thus, I respectfully dissent.[2]
I.
Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”), 28 U.S.C. § 2254(d), we are prohibited from granting habeas relief on any claim adjudicated in state court unless the ruling:
(1) resulted in a decision that was contrary to, or involved an unreasonable *820 application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
In Williams v. Taylor, the Supreme Court emphasized our limited role under AEDPA in reviewing habeas claims:
[I]t seems clear that Congress intended federal judges to attend with the utmost care to state-court decisions, including all of the reasons supporting them decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ.... [Fjederal habe-as courts must make as the starting point of their analysis the state courts’ determinations of fact, including that aspect of a “mixed question” that rests on a finding of fact. AEDPA plainly sought to ensure a level of “deference to the determinations of state courts,” provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent “retrials” on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.
529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal citation omitted).
In the present case, the habeas claims by petitioners Stevie and Randy Caldwell constitute an “unreasonable application” challenge under AEDPA. See generally, Stuart v. Wilson, 442 F.3d 506, 514 (6th Cir.2006). In this regard, “[tjhe question under AEDPA is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.” Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In my view, the application of federal law by the CCAT was not unreasonable. In hindsight, my colleagues would have ruled differently. However, even when a state court errs, we may substitute our judgment only if the state adjudication was unreasonable. Here, it was not.
II.
Petitioners contend that their defense attorneys were constitutionally ineffective for failing to call them father, William Caldwell, and wives, Bridgett and Gayle Caldwell, as alibi witnesses after referencing their anticipated testimony during the opening statement. The CCAT correctly rejected this argument.[3]
In Strickland, the Supreme Court established a two-prong test regarding ineffective assistance of counsel:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
*821 466 U.S. at 687, 104 S.Ct. 2052. Under this test, judicial scrutiny of counsel’s performance is “highly deferential.” Id. at 689, 104 S.Ct. 2052. As the Strickland Court noted, “[i]t is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.” Id. Accordingly, “[w]e address not what is prudent or appropriate, but only what is constitutionally compelled" United States v. Cronic, 466 U.S. 648, 665, n. 38, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (emphasis added), and apply “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance[,]” Strickland, 466 U.S. at 689,104 S.Ct. 2052 (emphasis added).
III.
In my view, the CCAT thoroughly and reasonably analyzed and ruled upon the issue of defense counsel’s alleged ineffectiveness. In pertinent part, the state court’s analysis is as follows:
In the opening statement, trial counsel stated that they expected the proof to show the petitioners were at home in bed with their wives during the night in question. No witnesses were called by the trial defense team.
The putative alibi witnesses were: Bridgett Caldwell (wife of Stevie Caldwell), Gayle Caldwell (wife of Randy Caldwell), William Caldwell (father of petitioners), Eugene Mitchell, and Junior Emerton. At the post-conviction hearing, Bridgett Caldwell said she would have testified at trial that the petitioners were at home on the night of the offense. She further said this would have been perjured testimony, given due to pressure from Caldwell family members.
Gayle Caldwell, wife of Randy Caldwell, testified at the post-conviction hearing that both petitioners were at home on the night of the offense except for a brief time when they went to a store. She admitted that after midnight, she only saw Randy Caldwell at about 2:00 a.m. and did not see Stevie Caldwell until the next morning. This testimony would not have been inconsistent with that State’s theory as to the sequence of events.
William Caldwell, father of petitioners, stated in his post-conviction testimony that both petitioners were at their home at 10:00 p.m. and 1:50 a.m. on the night of the offense.
A mock trial was conducted by trial defense counsel. All the proposed alibi witnesses, with the exception of Mitchell, were evaluated. Both attorneys had misgivings about the wives’ capability as witnesses, although they did not question their credibility. As to William Caldwell, the trial attorneys doubted his testimony actually provided an alibi as to the significant times.
A failure by trial defense counsel to present proof that was promised in opening statements may have such an adverse effect on the trial as to require reversal of the conviction. State v. Zimmerman, 823 S.W.2d 220, 225 (Tenn. Crim.App.1991). The trial transcript was not made an exhibit at the post-conviction proceeding, but we will review our record from the direct appeal. State v. Toimies, 56 S.W.3d 30, 34 (Tenn.Crim.App.2000). At trial, the State presented Guy Goff, the Chief Criminal Investigator for White County Sheriffs Department. Goff went to the petitioners’ residence on December 8, 1994, the day of the offense, and separately interviewed the petitioners, Lester Cunningham (their accomplice) and the petitioners’ wives. The following exchange with *822 Goff occurred on cross-examination by Stevie Caldwell’s counsel:
Question: Okay. So when you got there and you got everybody separated and talked to them in separate rooms and so forth, the consistent story, the theme that ran through the testimony or the statements that you got from Stevie; from Bridgett; from Randy; from Gail, Randy’s wife; and from Boss was that they had fought chickens there, all night, or fought chickens there up until the early morning hours, twelve or so. Right?
Answer: Correct.
Question: And that they went to bed and slept there until a relative called about six o’clock in the morning and told them that Luther Gist’s house had been burned down?
Answer: I don’t, let’s see, I don’t recall if it was exactly six o’clock or not, but that’s, the rest of that’s correct.
During closing argument, trial counsel for Stevie Caldwell was able to argue, without objection, as follows: “We certainly could have called witnesses up here to testify where those boys were that night. Their wives would have testified that they were home with them.” During the mock trial, trial counsel had the opportunity to assess the proposed alibi witnesses. Both counsel had obvious misgivings concerning the proposed alibi witnesses. As the proof developed, counsel were able to put the wives’ statements of alibi into evidence through the Sheriffs chief investigator, Mr. Goff. Even in the luminescence of hindsight, we cannot conclude that trial counsel’s course of action and tactical choices, as to the alibi witnesses, fell below the competence demanded of attorneys in criminal cases.
Caldwell v. Tennessee, No. M2001-00334-CCA-R3-PC, 2002 WL 31730875, at *16-17 (Tenn.Crim.App. Dec.4, 2002).
Because the above analysis is not unreasonable, AEDPA requires us to deny the habeas petitions. Moreover, I agree with the CCAT that it was reasonable for defense counsel not to call the alibi witnesses because: (1) William Caldwell did not provide an alibi for the relevant time period; (2) the substance of the alibi defense was admitted through the testimony of investigator Guy Goff; and (3) defense counsel determined the wives were not good witnesses.[4]
It is critical that the decision regarding the alibi witnesses was deliberate and strategic. See Lema v. United States, 987 F.2d 48, 54 (1st Cir.1993) (“The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.”). “[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable^] ” Strickland, 466 U.S. at 690, 104 S.Ct. 2052 (emphasis added); see also Wright v. Bell, 619 F.3d 586, 596 (6th Cir.2010) (it is not ineffective assistance of counsel to fail to call mitigation witness when decision was made “after thorough investigation”). Here, it is undisputed that the decision not to call the alibi witnesses was based on a thorough investigation. Indeed, after conducting a mock trial, defense counsel were fully aware of the strengths and weaknesses of *823 the potential alibi testimony. Based upon their assessment, defense counsel made a deliberate and informed decision that the risks associated with calling the alibi witnesses outweighed the potential benefits, given how other events unfolded at trial. See Caldwell, 2002 WL 31730875, at *6 (“After the close of the State’s proof, both attorneys felt that the case had gone as well for the defense and as bad for the State as they could have imagined.”). The decision was objectively reasonable because “the risk of ‘rocking the boat’ may warrant a decision by trial counsel to fore-go the presentation of further defense testimony, even favorable testimony.” Lema, 987 F.2d at 54; see also United States v. Natanel, 938 F.2d 302, 310 (1st Cir.1991) (“In litigation as in life, there is much to be said for maxims such as ‘if it ain’t broke, don’t fix it’ and ‘quit while you’re ahead.’ ”).
The majority cites several cases in support of their contention that the failure to call available alibi witnesses may constitute deficient performance. However, in each of these cases, counsel either failed to investigate the potential witnesses, or failed to file the required notice of alibi witness.[5] Accordingly, such decisions were not strategic. See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir.2001) (a “strategic” decision entitled to deference is a “conscious, reasonably informed decision made by an attorney with an eye to benefitting his client”). In contrast, there is no allegation in this case that defense counsel failed to investigate the relevant alibi witnesses, or failed to file the required notice of alibi. The fact that defense counsel conducted a mock trial demonstrates that their decision not to call such witnesses was a quintessential strategic decision entitled to the highest level of deference under Strickland.
While defense counsel promised alibi evidence during his opening statement, his failure to introduce the wives’ testimony does not, in and of itself, constitute constitutionally deficient performance. See Harrison v. Motley, 478 F.3d 750, 758-59 (6th Cir.2007) (holding the failure to call alibi witnesses promised during opening statement was not ineffective assistance of counsel); see also Williams v. Bowersox, 340 F.3d 667, 671-72 (8th Cir.2003) (“[Flailing to present witnesses promised in an opening is not always an error of a constitutional dimension.”); Schlager v. Washington, 113 F.3d 763, 768-70 (7th Cir.1997) (failure to call witness promised during opening statement not ineffective assistance of counsel). Indeed, if such were the rule, it would encourage counsel to perpetuate mistakes made during opening statements. Moreover, defense counsel did not fail to call the alibi witnesses out of inattentiveness. Rather, their deci *824 sion not to call the witnesses was the result of a deliberate, strategic choice that such testimony would not be beneficial. See Harrison, 478 F.3d at 759 (the failure to call alibi witnesses mentioned during opening statement was “not due to inattentiveness by [defense] attorneys”).
The majority contends that in assessing counsel’s performance, courts are limited to considering the strategic reasoning expressly offered by the attorneys. According to the majority, we may not consider the testimony of Goff, nor the wives’ capability as witnesses, in analyzing the reasonableness of defense counsel’s performance. However, Strickland instructs that, for purposes of our review, we must “determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.” 466 U.S. at 690,104 S.Ct. 2052 (emphasis added). Our review is not from a subjective standpoint, but based upon an “objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052 (emphasis added).[6] Accordingly, we must consider, from an objective perspective, all relevant facts and circumstances in order to assess whether the performance of counsel was constitutionally deficient.
Additionally, I note that Attorney Cantrell, in his professional judgment, did not believe that the wives were good witnesses, stating, “I didn’t think [Gayle] did very good in the mock trial; I think she is limited in her abilities. Quite frankly, Bridgett would have probably made the better of the two (2), but that is like considering the lesser of the two (2) evils, actually.” He also stated that neither Bridgett nor Gayle “did a good job testifying.”
When viewed objectively, the performance of defense counsel was not constitutionally deficient. The deliberate and strategic decision by counsel not to call the alibi witnesses, and thus introduce cumulative evidence of an alibi through interested family members who were not good witnesses, was not an “error[ ] so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Thus, after applying the deference required under AEDPA, I would deny habeas relief because the ruling by the CCAT on the issue of constitutionally deficient performance was not unreasonable.
IV.
Were petitioners to demonstrate that the CCAT unreasonably decided the issue of counsel’s alleged deficient performance, we would next decide whether they sustained their burden of proving prejudice.[7] Regarding our standard of review on this issue, petitioners contend that the strictures of AEDPA do not apply because the CCAT did not make a specific finding regarding prejudice. See Hill v. Mitchell, 400 F.3d 308, 313 (6th Cir.2005) (“[W]hen a *825 claim has not been adjudicated on the merits in State court proceedings, ... we look at the claim de novo rather than through the deferential lens of AEDPA.”) (internal quotation marks and citation omitted). Petitioners appear to be correct, and at oral argument respondent apparently conceded the point. However, irrespective of whether AEDPA deference applies, petitioners have failed to establish prejudice.
On the issue of prejudice, Strickland instructs:
It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test[.]
The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
466 U.S. at 693-94,104 S.Ct. 2052.
Accordingly, prejudice may not be presumed. Rather, it must be shown by petitioners based upon the evidence. Id. at 693, 104 S.Ct. 2052 (“[Ajctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.”) (emphasis added). The majority, however, does not analyze the evidence to determine whether, but for the alleged error, there was a reasonable probability that the verdicts would have been different. Instead, in conclusory fashion, they assume prejudice based upon the error.
Following my thorough review of the record, I conclude that petitioners have failed to sustain their burden of demonstrating prejudice. First, in order to establish prejudice, “the new evidence that a habeas petitioner presents must differ in a substantial way—in strength and subject matter—from the evidence actually presented!.]” Hill, 400 F.3d at 319. Here, the alibi evidence ivas admitted through the testimony of Goff, and because no objection was made, the statement retained its full evidentiary value. See Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (“[W]hen [hearsay] evidence ... is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible.”); Glenn v. United States, 271 F.2d 880, 883 (6th Cir.1959) (“Ordinarily, where no objection is taken to the reception of hearsay testimony it may properly be considered, and given its natural probative effect as if it were in law admissible.”); 1 McCormick on Evidence § 54 (6th ed. 2006) (“If the testimony is received without objection, it becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power.”). Moreover, defense counsel stated during closing argument, without objection, that the wives would have supported the alibi. (“We certainly could have called witnesses up here to testify where those boys were that night. Their wives would have testified that they were home with them.”) Accordingly, the testimony of the alibi witnesses would not “differ in a substantial way” from the evidence that was presented.
Second, the case against petitioners was strong. See Lundgren v. Mitchell, 440 F.3d 754, 770 (6th Cir.2006) (“In determining whether prejudice has resulted from counsel’s errors, a court must consider the totality of the evidence before the jury[.]”) (internal quotation marks and citation omitted). Linville Roberts testified that on the night of the fire, at about 3:00 a.m., Stevie Caldwell and Lester Cunningham appeared at her door, made phone calls, and stayed at her home for several hours. Accordingly, this testimony of a disinter *826 ested witness would have discredited the alibi testimony of the family members.
Moreover, the crime itself was chronicled by an eyewitness and accomplice, Lester Cunningham. This detailed testimony was corroborated by physical and circumstantial evidence which included: (1) two plastic gallon jugs discovered in Randy Caldwell’s car containing an accelerant; (2) a cigarette lighter found in Stevie Caldwell’s pocket; (3) the testimony of Edward Bain and Norman Roberts that on the night of the arson, they heard the sound of a car with a loud muffler similar to the sound of Randy Caldwell’s vehicle at 1:50 a.m. and 2:15 a.m., respectively; and (4) the testimony of Linville Roberts that on the night of the arson Stevie Caldwell and Cunningham appeared at her door around 3:00 in the morning. Caldwell, 2002 WL 31730875, at *3-4.
In my view, it is not reasonably probable that the verdicts would have been different had the family members testified. See generally, Smith v. Jago, 888 F.2d 399, 409 (6th Cir.1989) (“[W]e do not believe that [the witness’] testimony, in light of its dubious credibility ... would be sufficient to raise a reasonable doubt in the minds of the jurors.”).
V.
For these reasons, I respectfully dissent. I would affirm the district court’s order denying the petitions for writs of habeas corpus.

. With little or no avail, the Supreme Court has repeatedly reversed us on this issue. See, e.g. Berghuis v. Smith, — U.S. —, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010); Berghuis v. Thompkins, — U.S. —, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); Renico v. Lett, - U.S. -, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010); Smith v. Spisak, —U.S. —, 130 S.Ct. 676, 175 L.Ed.2d 595 (2010); Bobby v. Bies, — U.S. —, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009); Bell v. Cone, 543 U.S. 447, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005); Mitchell v. Es-parza, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

. Regarding the scope of the certificate of appealability ("COA”), I concur in that portion of the majority opinion that clarifies the COA based upon the apparent mistake.

. Petitioners also allege that defense counsel was ineffective for the failure to call Timmy Dildine. However, Dildine was not referenced in defense counsel's opening statement. Accordingly, because the COA, as clarified, is limited to alleged ineffectiveness stemming from the failure to call witnesses referenced in defense counsel’s opening statement, it is not necessary to address this testimony.

. While not known at the time of trial, one reason Bridgett Caldwell may not have been perceived as a good witness (although she was viewed as better than Gayle Caldwell) is because her testimony may have been perjury. According to her post-conviction testimony, "the petitioners were not really at home on the night of the fire, and she only agreed to testify that they were because the family put pressure on her.” Caldwell, 2002 WL 31730875, at *6. She also admitted "that she told the district attorney’s office a different story than the aforementioned version she related to the defense attorneys.” Id.

. See Bigelow v. Haviland, 576 F.3d 284, 287 (6th Cir.2009) (counsel ineffective when he "did not reasonably investigate [client’s] alibi defense”); Ramonez v. Berghuis, 490 F.3d 482, 488 (6th Cir.2007) (decision not to call alibi witnesses "grounded on a fatally flawed foundation,” as the attorney failed to engage "in the minimal-and essential-step of interviewing the witnesses”); Stewart v. Wolfen-barger, 468 F.3d 338, 355 (6th Cir.2006) (failure "to file a proper notice of alibi witnesses, and [failure] to investigate ... a potential witness .... constitute deficient performance under Strickland’s first prong”); Towns v. Smith, 395 F.3d 251, 259 (6th Cir.2005) ("Without even attempting to interview [the witness], counsel simply decided not to call him[.]"); Pavel v. Hollins, 261 F.3d 210, 218-20 (2d Cir.2001) (attorney’s failure to call alibi witnesses "was animated primarily by a desire to save himself labor” and his "inadequate investigation”); Harris v. Reed, 894 F.2d 871, 879 (7th Cir.1990) (Defense counsel’s "decision not to present ... the testimony of [two witnesses]-[was] a decision made without interviewing the witnesses[.]”); Blackburn v. Foltz, 828 F.2d 1177, 1183 (6th Cir.1987) (counsel "for no apparent reason failed to investigate a known and potentially important alibi witness”).

. In assessing objective reasonableness, this court has analyzed whether reasonable strategic motives may have existed to support the decisions of counsel. See e.g. Wright, 619 F.3d at 596-97 (opining on possible strategic reasons for not calling mitigation witness, noting that the "attorneys could not recall ... the exact reason they” made the decision); United States v. Fortson, 194 F.3d 730, 736 (6th Cir.1999) (“We can conceive of numerous reasonable strategic motives for the decision.”).

. In Cronic, the Supreme Court held that a criminal conviction must be reversed, without any specific showing of prejudice by the defendant, "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.” 466 U.S. at 659 n. 25, 104 S.Ct. 2039. Here, as described above, there is no evidence of an error by defense counsel reaching this magnitude. Accordingly, petitioners are required to establish prejudice to receive habeas relief.